IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHANIE HERNANDEZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:18-CV-319-RP |
| CLEARWATER TRANSPORTATION, LTD., | § § § | |
| Defendant. | § | |

### ORDER

Before the Court are the summary judgment motions filed by Plaintiff Stephanie Hernandez ("Hernandez"), (Dkt. 44), and Defendant Clearwater Transportations, Ltd. ("Clearwater"), (Dkt. 42). Having considered the parties' arguments, the evidence, and the relevant law, the Court will grant in part and deny in part Hernandez's partial motion for summary judgment and deny Clearwater's motion for summary judgment.

### I. BACKGROUND

This is an employment discrimination case. Hernandez started working as a rental sales agent at Clearwater in 2014. (Hernandez Dep. Excerpts, Dkt. 43-1, at 3). Clearwater is a former rental car company which operated in Austin, Killeen, and San Angelo under the Dollar, Thrifty, and Hertz brands. (30(b)(6) Dep., Dkt. 43-2, at 15). In January 2017, Clearwater promoted Hernandez to sales manager, a position for which another manager, Traye Zuniga ("Zuniga"), had also applied. (*Id.* at 4–5, Merrill Dep., Dkt. 48-3, at 11–13). As a sales manager, Hernandez was responsible for overseeing customer service sales representatives, hiring, training, and customer service. (Manager Responsibilities, Dkt. 43-1, at 34). Between 2015 and 2017, Clearwater experienced a downturn in business, and it promoted Hernandez in "an effort to get someone in that could focus, that could bring additional revenue." (30(b)(6) Dep., Dkt. 43-3, at 3).

1

On May 23, 2017, Hernandez went to the emergency room due to vomiting, and let her supervisor, Danny Owens ("Owens"), know that she was ill. (Text Messages, Dkt. 44-4, at 3–5). Later that month, Hernandez learned that she was pregnant and was diagnosed with hyperemesis gravidarum, a rare and severe form of morning sickness. (Hernandez Dep. Excerpts, Dkt. 43-1, at 18; Dkt. 44-2, at 7, 10). Hernandez's hyperemesis gravidarum symptoms included nausea, vomiting, dehydration, headaches, and weakness. (Hernandez Dep. Excerpts, Dkt. 44-2, at 6–7; Interrogatory Response, Dkt. 44-5, at 4).

Hernandez first asked Shelby Sumerlin ("Sumerlin"), the office administrator, for advice on telling Clearwater about her pregnancy. (Hernandez Dep. Excerpts, Dkt. 44-2, at 6). After Sumerlin encouraged Hernandez to tell others at Clearwater about her pregnancy, Hernandez alerted Crystal Maldonado ("Maldonado") of human resources of her pregnancy and related illness in early June 2017. (*Id.*). Hernandez then told Owens and Rene Mitchell, a senior Clearwater employee, that she was pregnant. (*Id.* at 6–7). Hernandez was then hospitalized for three days due to her hyperemesis gravidarum. (*Id.* at 7–8). Hernandez testified that on June 6, 2017, she told Monty Merrill ("Merrill"), the then-president of Clearwater, about her pregnancy and hyperemesis gravidarum. (*Id.* at 8; Hernandez Dep. Excerpts, Dkt. 48-1, at 9). She further testified that during her conversation with Merrill, Hernandez requested accommodations, such as working from home or switching to hourly or part-time work, because she was "feeling sick a lot," and Merrill rejected these proposed accommodations. (*Id.* at 6, 9). Merrill disputes that Hernandez ever told him about her pregnancy or requested any accommodation. (Merrill Dep., Dkt. 43-3, at 6; 30(b)(6) Dep., Dkt. 43-2, at 16).

On June 12, 2017, Clearwater terminated Hernandez's employment, citing "a significant downtown in business in the last 6 months." (Termination Letter, Dkt. 44-6, at 2). In the letter terminating Hernandez's employment, Clearwater indicated that Hernandez's position was being eliminated because it was "the most recent position filled and that had the least impact on

2

operations." (*Id.*). Owens and Merrill made the decision to terminate Hernandez's employment on May 23, 2017, and planned to terminate Hernandez's employment on June 9 but since Hernandez was in the hospital that day, they waited until June 12. (Interrogatory Response, Dkt. 44-7, at 3). Despite indicating in its termination letter that Owens was involved in the decision to terminate Hernandez's employment, Clearwater's corporate representative testified that the decision was "solely" made by Merrill. (*Compare* Termination Letter, Dkt. 44-6, at 2, *with* 36(b) Dep., Dkt. 43-2, at 3).

Merrill contends that he was unaware that Hernandez was pregnant or had requested an accommodation based on her hyperemesis gravidarum at the time the decision was made to terminate her employment. (Merrill Dep., Dkt. 43-3, at 6, 8–9). Merrill, as Clearwater's corporate representative, further testified that the decision to terminate Hernandez's employment was "strictly financial" due to Clearwater's downturn in business. (30(b)(6) Dep., Dkt. 43-2, at 14). Hernandez's job responsibilities were taken on by Zuniga, a male manager who was promoted to the position of airport manager and received a raise after Hernandez's termination. (Merrill Dep., Dkt. 44-3, at 7). Zuniga had been with Clearwater "a lot longer" than Hernandez, and had been in a management position for three years when he was promoted to airport manager and assumed Hernandez's job responsibilities. (*Id.* at 15–17). At the time Clearwater terminated Hernandez's employment, it had a rental sales agent position open, which Hernandez requested to be transferred to instead of terminated. (Merrill Dep., Dkt. 48-3, at 11–13; 30(b)(6) Dep., Dkt. 48-2, at 4). Clearwater denied Hernandez's request to be transferred to her previous position rather than be terminated. (*Id.*).

On February 7, 2019, Clearwater filed for bankruptcy under Chapter 11, which was later converted to a Chapter 7 bankruptcy proceeding. (Bankruptcy Proceedings, Dkt. 43-4). Following Hernandez's termination, Clearwater did not hire any new managers "to the end of time with the company." (Merrill Dep., Dkt. 44-3, at 11).

3

Hernandez filed the instant suit on April 17, 2018, bringing claims of pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k); the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq.* ("TCHRA") and of discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") and the TCHRA. (Compl., Dkt. 1; Am. Compl., Dkt. 14, at 4–5). Clearwater seeks summary judgment in its favor as to each of Hernandez's claims. (Clearwater Mot. Summ. J., Dkt. 42, at 5). Hernandez, meanwhile, seeks only partial summary judgment—she asks the Court to grant her judgment as a matter of law on the issue of whether she is a qualified individual with a disability under the ADA and on Clearwater's affirmative defenses. (Hernandez Mot. Summ. J., Dkt. 44, at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

#### A. Hernandez's Partial Motion for Summary Judgment

Hernandez moves for partial summary judgment on her qualification as a disabled individual under the ADA, and on "most of [Clearwater]'s affirmative defenses." (Dkt. 44, at 2). Clearwater opposes Hernandez's motion. (Resp., Dkt. 46). The Court will address each of Hernandez's bases for summary judgment below.

1.  Qualified Individual with a Disability under the ADA

Hernandez first moves for summary judgment on the issue of whether she is a "qualified individual" within the meaning of the ADA. (Dkt. 44, at 4).[1] The ADA, as amended by the ADAAA, prohibits discrimination against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. §12112(a). A "qualified individual with a disability" is one who, with or without a reasonable accommodation, can perform the essential functions of the job. 42 U.S.C. §12111(8). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Substantially limits" means that the individual is limited "to perform a major life activity as compared to most people in the general population" and "not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. §1630.2(j)(1)(ii).

Hernandez argues that she was a "qualified individual with a disability" within the meaning of the ADA because she had an actual disability and had a record of disability, but was nonetheless able to perform the essential functions of her position. (Dkt. 44, at 5–6). Clearwater responds that Hernandez cannot meet her burden of showing that she was disabled under the ADA because she has not presented sufficient evidence that she had an impairment that substantially limited one or more of her major life activities or that she had a record of an impairment that substantially limited one or more of her major life activities. (Dkt. 46, at 6–9). The Court will address each of these arguments in turn.

---

[1] Hernandez must establish that she is a "qualified individual with a disability" to satisfy the first element of her failure to accommodate claim under the ADA. *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (After the passage of the ADAAA, a plaintiff in this circuit "must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability . . . '").

Hernandez first argues that she had an actual disability because the symptoms she experienced while suffering from hyperemesis gravidarum affected her ability to think, concentrate, care for herself, or work, which "demonstrate[s] that she was disabled." (Dkt. 44, at 5). Clearwater responds that Hernandez cannot show that her hyperemesis gravidarum affected one or more major life activities because she has not established "how moderate and/or severe her ailments were at that time." (Dkt. 46, at 7). Though Clearwater claims that Hernandez has failed to provide "any support to suggest" that her pregnancy-related condition affected major life activities, Hernandez in fact presented deposition testimony addressing the severity of her symptoms and their effects on her ability to go about her day-to-day life. (Dkt. 46, at 7; Hernandez Dep. Excepts, Dkt. 44-2, 5–6, 7–10 (testifying that she recalls "being just physically out of commission" due to her hyperemesis gravidarum symptoms); Hernandez Dep. Reply Excerpts, Dkt. 50-1, at 3, 10 ("I just couldn't function at all during that time.")).

Hernandez was also hospitalized for three days following her diagnosis because her condition had caused her gastrointestinal system to "substantially malfunction." (Dkt. 44, at 5; Hernandez Dep. Excerpts, Dkt. 44-2, at 7–8). Indeed, Hernandez's hospitalization demonstrates that her hyperemesis gravidarum affected her ability to work, which is specifically enumerated as a "major life activity" under the ADA. 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."); (*see also* Hernandez Dep. Reply Excerpts, Dkt. 50-1, at 10). Additionally, courts have recognized that hyperemesis gravidarum can result in internal injuries and organ failure if untreated. *Klausner v. Indus. Risk Insurers, Inc.*, 1999 WL 476285, at *1 (S.D.N.Y. July 8, 1999) ("The severe vomiting experienced by women with hyperemesis gravidarum can lead to

serious complications, such as rupture of the esophagus, collapse of the lung, and tearing of the spleen.").

Clearwater attempts to analogize this case to *Tomiwa v. PharMEDium Servs., LLC*, 2018 U.S. Dist. LEXIS 66772 at *13 (S.D. Tex. April 20, 2018), where the court did not find that plaintiff's pregnancy constituted a disability despite her hospitalization. Yet in contrast to *Tomiwa*, where plaintiff argued that her pregnancy itself was her disability, here Hernandez does not suggest that her pregnancy made her disabled but rather her hyperemesis gravidarum. (Dkt. 46, at 8; Dkt. 50, at 3). Although the Fifth Circuit has not addressed whether hyperemesis gravidarum is properly considered a disability under the ADA, Hernandez cites to *Bateman v. Project Hosp., Inc.*, 2009 WL 3232856, at *10 (E.D.N.Y. Sept. 30, 2009) to demonstrate that courts in our sister circuits have found the condition to be sufficiently severe to satisfy the ADA's definition of a disability. In *Bateman*, the Court found that because plaintiff's hyperemesis gravidarum affected her "ability to engage in her employment," the condition satisfied the ADA's statutory definition of "disability." *Id.* As in *Bateman*, here Hernandez has established that her pregnancy-related condition substantially limited her ability to engage in major life activities, such as work, and as such, qualifies as a disability under the ADA.

Next, Hernandez argues that despite her disability she was able to perform the essential functions of her job so as to be considered a "qualified individual with a disability" under the ADA. (Dkt. 44, at 6). Clearwater responds that Hernandez has failed to establish that she could perform the essential functions of her position because she testified that her disability substantially affected her ability to perform these functions. (Dkt. 46, at 9). Yet Hernandez did not testify that she could not perform her job at all, but rather that while hyperemesis gravidarum interrupted her ability to work, it did not inhibit her ability to perform the tasks required of her position. (Hernandez Dep. Reply Excerpts, Dkt. 50-1, at 10–11) ("I still had time in-between [vomiting] where I was, you know,

8

able to stand up or do what I needed to do."). Clearwater has presented no evidence to create a triable issue of fact as to whether Hernandez could perform her essential job functions. In fact, its representative testified that on the date of her termination, Hernandez was qualified to perform the essential functions of her sales manager position. (Merrill Dep., Dkt. 44-3, at 4). The Court thus finds that there is no dispute of material fact as to whether Hernandez was a qualified individual with a disability under the ADA, and grants Hernandez's motion for summary judgment in this regard.

2. Clearwater's Affirmative Defenses

Hernandez next moves for summary judgment on "most of [Clearwater]'s affirmative defenses." (Dkt. 44, at 2, 7). Specifically, Hernandez asks the Court to grant summary judgment in her favor on affirmative defenses nos. 1, 2, 3, 5, 6, 7, 8, 9, 11, 13, 17, and 21. (*Id.* at 7–9). With the exception of affirmative defense no. 5, failure to mitigate, Hernandez relegates her argument on Clearwater's affirmative defenses to a chart listing the affirmative defense and Hernandez's basis for her motion. (*Id.*). In its response, Clearwater indicates that it does not oppose the grant of summary judgment on affirmative defenses nos. 3, 8, 9, 17, and 21. (Resp., Dkt. 46, at 10–12). As such, summary judgment is granted in Hernandez's favor on affirmative defenses nos. 3, 8, 9, 17, and 21. The Court will address each of the affirmative defenses that remain in dispute.

Hernandez first challenges Clearwater's affirmative defense that Hernandez has failed to state a claim upon which relief can be granted by arguing that Clearwater waived this defense by failing to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 44, at 7). Clearwater responds that Hernandez "has waived any argument that summary judgment should be granted as to this affirmative defense," since she did not acknowledge her pregnancy discrimination claim when addressing this defense in her motion. (Dkt. 46, at 10). Regardless, this affirmative

9

defense is now moot given that the Court has denied Clearwater's motion for summary judgment on all of Hernandez's claims. *See* Section III(B).

Hernandez next moves for summary judgment on the equitable defenses of waiver, laches, consent, and estoppel because they are not "relevant defenses to the statutory employment claims in this case," and Clearwater's failure to produce supporting information for these defenses in response to interrogatory requests and in deposition testimony makes summary judgment appropriate. (Dkt. 44, at 10). Clearwater counters that "these are proper defenses in discrimination cases," yet fails to identify any factual support for the defenses. (Dkt. 46, at 10). Because Clearwater has offered no "specific facts showing that there is a genuine issue for trial" in response to Hernandez's contention that Clearwater has no evidence to support these affirmative defenses, the Court will grant summary judgment in Hernandez's favor on affirmative defense no. 2. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325 (1986) ("[T]he burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.") (cleaned up).

Next, Hernandez argues that summary judgment should be granted on Clearwater's affirmative defense that Hernandez failed to mitigate her damages because it cannot produce any evidence that: 1) Hernandez rejected any virtually identical employment; 2) there were substantially equivalent jobs available to which Hernandez did not apply; or 3) that Hernandez failed to use reasonable diligence in her job search. (Dkt. 44, at 10). In its response, Clearwater identifies testimony wherein Hernandez stated that there was an open position that she did not apply for at the place where her father was employed, that she declined opportunities to pursue other positions between June 2017 and July 2018, and only sought out "stay-at-home" positions. (Dkt. 46, at 10–11) (citing Hernandez Dep. Excerpts, Dkt. 47-1, at 4–5, 8–9). Hernandez disputes that the other positions identified by Clearwater were "virtually identical" to her position with Clearwater or that Hernandez ever "declined various jobs," but rather declined to respond when approached because

10

"it wasn't enough money for me to go to work." (Dkt. 50, at 5–6; Hernandez Dep. Excerpts, Dkt. 47-1, at 5). At this point, Clearwater has identified sufficient factual allegations to create a material dispute as to whether Hernandez failed to mitigate her damages. As such, summary judgment is not proper on this affirmative defense.

With regard to Clearwater's affirmative defense no. 6 regarding the lack of a causal connection between her protected activity and the adverse employment action, the Court declines to grant summary judgment on this defense given that neither party has offered any support on this issue besides stating that it is an element of Hernandez's claims. (Dkt. 44, at 7). The Court similarly declines to grant Hernandez's motion for summary judgment on affirmative defense no. 7, as Hernandez has offered no legal or factual support for her motion in this regard besides stating that it is "not applicable to the employment claims at issue." (*Id.*). Hernandez's failure to offer any support with regard to affirmative defense no. 11 similarly precludes summary judgment on this affirmative defense. (*Id.* at 8).

Lastly, Hernandez moves for summary judgment on Clearwater's defense that Hernandez's damages were caused by persons other than Clearwater. (*Id.*). Hernandez once again asserts that Clearwater has failed to provide any factual support for this defense in response to interrogatory requests and in deposition testimony. (*Id.*). Clearwater responds that it did not cause Hernandez any damages since it offered her a severance check that she did not cash—suggesting that Hernandez's damages were caused by her own failure to cash her severance check. (Dkt. 46, at 12). Because this argument is duplicative of Clearwater's affirmative defense asserting that Hernandez failed to mitigate her damages or contributed to her own damages, and Clearwater has offered no evidence of a third-party who may be responsible of Hernandez's damages, the Court will grant Hernandez's motion for summary judgment on this affirmative defense.

11

### B. Clearwater's Motion for Summary Judgment

Clearwater moves for summary judgment on all of Hernandez's claims. The Court will address each claim in turn.

### 1. Pregnancy Discrimination Claims under Title VII and the TCHRA

Clearwater first moves for summary judgment on Hernandez's pregnancy discrimination claims brought under Title VII and the TCHRA.[2] (Dkt. 42, at 10). Title VII, as amended, 42 U.S.C. § 2000e *et seq.*, prohibits an employer from "discriminat[ing] against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(l). The Pregnancy Discrimination Act of 1978 amended the definitions of "because of sex" and "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002) ("The PDA amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination."). To survive summary judgment, a Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion, which may be established via direct or circumstantial evidence. *Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 947 (5th Cir. 2020) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)).

Hernandez does not contend that she has presented any direct evidence of discrimination, and as such the Court will analyze her pregnancy discrimination claims under the *McDonnell-Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under this framework, Hernandez must first establish a *prima facie* claim of discrimination by establishing that she (1)

---

[2] The law governing discrimination claims under the TCHRA and Title VII is "identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999). As such, the Court analyzes these claims together.

12

belongs to a protected class; (2) is qualified for the position at issue; (3) was subject to an adverse employment action; and (4) was treated less favorably than other similarly situated employees outside of [her] class. *Thompson v. City of Waco*, 764 F.3d 500, 507 (5th Cir. 2014). Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action. *McDonnell-Douglas*, 411 U.S. at 802–04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for discrimination. *Id.*

Clearwater seemingly admits that Hernandez has satisfied the first three prongs of her *prima facie* case, arguing instead that that she is "unable to establish that she was replaced by someone outside her protected group." (Dkt. 42, at 12). Thus, the Court will assess whether Hernandez has identified a similarly situated employee who was treated more favorably than her in nearly identical circumstances. *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 875 (5th Cir. 2019). Clearwater contends that Hernandez cannot show that that Zungia was a similarly situated employee because, although her job duties were delegated to him, he had more managerial experience than Hernandez and was hired before her. (Def.'s Reply, Dkt. 49, at 2).

Hernandez responds that under Fifth Circuit precedent she "need only demonstrate her duties were delegated to non-pregnant employees." (Pl.'s Resp., Dkt. 48, at 7). To support this contention, Hernandez cites *McLaughlin v. W & T Offshore, Inc.*, where the Fifth Circuit found that a plaintiff had established a *prima facie* case of discrimination where "her duties were delegated to two employees who were not pregnant" after she was terminated. 78 Fed. Appx. 334, 338 (5th Cir. 2003). Indeed, it is undisputed that Hernandez's job duties were delegated to Zuniga after her

13

employment was terminated. (Merrill Dep., Dkt. 44-3, at 7, 15–17). While Clearwater contends that Zuniga's longer tenure with the company and as a manager disqualify him from being considered a similarly situated employee, Hernandez argues that because "Zuniga had the same responsibilities as Plaintiff, was supervised by and had his employment status determined by Merrill just like Plaintiff, and he and Plaintiff were both long time employees promoted to management roles," Zuniga is properly considered a similarly situated employee. (Dkt. 48, at 8; Dkt. 49, at 2). Because Clearwater has cited to no case law standing for the proposition that Zuniga's longer tenure with the company and as a manager diminishes the applicability of *McLaughlin* in this case,[3] the Court finds that Hernandez has established a *prima facie* case of discrimination.

Because Hernandez has established a presumption of discrimination, the burden shifts to Clearwater to identify a "legitimate, non-discriminatory purpose" for its termination of Hernandez's employment. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Clearwater offers its impending bankruptcy as its non-discriminatory reason, arguing that it terminated Hernandez's employment due to its "dire financial state and need[] to reduce expenses in order to prevent the need for bankruptcy protection." (Dkt. 42, at 13; Termination Letter, Dkt. 44-6, at 2). In addition, Clearwater contends that the decisionmaker, Merrill, was unaware of Hernandez's pregnancy until after her employment was terminated. (*Id.*). However, a factual dispute remains as to whether Owens, who was aware of Hernandez's medical issues at the time of her termination, was involved in the decision to terminate her employment as well as whether Hernandez told Merrill she was pregnant before her termination. (*Compare* Termination Letter, Dkt. 44-6, at 2, *with* 36(b) Dep., Dkt.

---

[3] The Court is also unpersuaded that Zuniga cannot be considered a similarly situated employee merely because he had been with Clearwater longer and held a managerial position there longer than Hernandez. Here, despite the difference in their length of time with Clearwater and as managers, Hernandez and Zuniga "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person." (Hernandez Dep. Excerpts, Dkt. 48-1, at 3; Merrill Dep., Dkt. 48-3, at 14; Zuniga Promotion, Dkt. 48-8); *Lee v. Kan. City S. Railway Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

14

43-2, at 3; *compare* Hernandez Dep. Excerpts, Dkt. 44-2, at 6–8, *with* Merrill Dep., Dkt. 43-3, at 6; 30(b)(6) Dep., Dkt. 43-2, at 16). Regardless, the Court finds that Clearwater's claim that its decision to terminate Hernandez's employment was "purely a financial decision" that is "unquestionably evidenced by [Clearwater]'s need to later file for bankruptcy," suffices to establish a non-discriminatory reason for Hernandez's termination. (Reply, Dkt. 49).

Having established a non-discriminatory reason for terminating Hernandez's employment, the burden swings back to Hernandez to show that the Clearwater's rationale is merely a pretext for discrimination. *McDonnell-Douglas*, 411 U.S. at 802–04. To do so, Hernandez must proffer "substantial evidence" to rebut the non-discriminatory reason Clearwater has articulated by "either [presenting] evidence of disparate treatment," or by showing that Clearwater's proffered explanations are "false or 'unworthy of credence.'" *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). Hernandez argues that Clearwater's financial justification for her termination is not credible because Clearwater had been facing a financial downturn since 2015, only terminated Hernandez's (and not any other employees') employment in 2017, and did not file for bankruptcy until 2019. (Dkt. 48, at 12). Hernandez also argues that because Clearwater gave Zuniga a raise after terminating Hernandez's employment despite passing him up for Hernandez's managerial position six month earlier, and denied her request to be transferred back to a counter position for which Clearwater had an opening at the time her termination, the Court should reject Clearwater's non-discriminatory explanation as pretextual. (Dkt. 48, at 12–14, Merrill Dep., Dkt. 48-3, at 11–13; 17–18; 30(b)(6) Dep., Dkt. 48-2, at 4).

Clearwater responds by calling Hernandez's challenges to its proffered non-discriminatory reasons "conclusory allegation[s]." (Dkt. 49, at 2–4). Yet as Hernandez points out, Merrill's own testimony puts the credibility of Clearwater's legitimate reason for terminating Hernandez in question, and factual disputes preclude a finding that Clearwater's reason was not pretextual.

Indeed, Merrill testified that he picked Hernandez over Zuniga for the managerial position Hernandez was promoted to in 2017. (Merrill Dep., Dkt. 48-3, at 12–13). In addition, Merrill testified that Hernandez was the only manager who was terminated in 2017, and that despite the availability of a counter sales position, Hernandez's prior position, at the time Hernandez was terminated, Clearwater refused to allow her to transfer to that position even when she requested such a transfer instead of termination. (30(b)(6) Dep., Dkt. 48-2, at 4; Merrill Dep., Dkt. 48-3, at 11–12, 17–18). Finally, while Clearwater's eventual bankruptcy certainly supports its contention that its decision to terminate Hernandez's employment was "purely" financial, Hernandez's allegations regarding Clearwater's treatment of her in contrast to that of other employees suffices to create a factual dispute as to the "veracity of that reason," and as such precludes summary judgment on her pregnancy discrimination claims. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016) ("Once the employee demonstrates that she met her burden of producing or relying on evidence that refutes or contests the employer's evidence of a legitimate, nondiscriminatory reason, there is often a genuine issue of material fact as to the veracity of that reason.")

### 2. Pregnancy Discrimination Claim under the ADA and TCHRA

To establish a *prima facie* case of discrimination based on disability, a plaintiff must show: "(1) that [s]he has a disability; (2) that [s]he was qualified for the job; (3) that [s]he was subject to an adverse employment decision on account of h[er] disability." *Equal Emp't Opportunity Comm'n v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014); *see also* 42 U.S.C. § 12112(a); TEX. LABOR CODE § 21.051.[4] If the plaintiff makes that showing, a presumption of discrimination arises, and the employer must articulate a legitimate nondiscriminatory reason for the adverse employment action.

---

[4] "Because TCHRA 'parallels the language of the [ADA]', Texas courts follow ADA law in evaluating TCHRA discrimination claims. *E.g.*, *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004). The following ADA analysis therefore applies equally to the TCHRA." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018).

*Id.* at 694. The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual. *See id.*

Clearwater first contends that Hernandez's pregnancy "is not enough to establish that she was physical[ly] impaired so as to constitute a disability," and that her "related medical conditions" do not constitute an "unusual circumstance" that would render her "disabled" under the ADA. (Dkt. 42, at 15) (citing *Tomiwa v. PharMEDium Servs., LLC*, 2018 U.S. Dist. LEXIS 66772 at *13 (S.D. Tex. April 20, 2018)). Yet the Court has already found that Hernandez's hyperemesis gravidarum is a disability for the purposes of the ADA. *See* Section III(A)(1). *Tomiwa* does not change this result because the plaintiff there claimed that her pregnancy itself constituted a disability under the ADA whereas here it is Hernandez's rare and severe pregnancy-related condition, hyperemesis gravidarum, that qualifies as a disability. (Am. Compl., Dkt. 14, at 4; Dkt. 50, at 3) ("Hyperemesis gravidarum, not [Hernandez]'s pregnancy, is the disability at issue"); *Tomiwa*, 2018 U.S. Dist. LEXIS 66772 at *3. As to the second factor of Hernandez's *prima facie* case of discrimination under the ADA, the parties do not dispute that she was qualified for her job.

As to the third factor, factual disputes as to whether Hernandez was subject to an adverse employment decision on account of her disability preclude summary judgment on this claim. As explained above, factual disputes regarding the decision-maker's awareness of Hernandez's pregnancy-related condition preclude the Court from determining the direct cause of Hernandez's termination. *See* Section III(B)(1). As such, the Court will also deny Clearwater's motion for summary judgment on Hernandez's pregnancy discrimination claim under the ADA.

### 3. Retaliation Claim under the ADA and TCHRA

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse

17

action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).[5] "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citation omitted), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive, *Seaman*, 179 F.3d at 301. In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

Clearwater first argues that Hernandez cannot meet the first prong of her case because "it is unclear what activity she engaged in that is protected under the ADA." (Dkt. 42, at 15). Hernandez responds that she engaged in protected activity under the ADA by requesting accommodations from Merrill, which is "undisputedly a protected activity under the ADA." (Dkt. 48, at 19) (citing *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008)). While the Court agrees that it is "undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity," here a factual despite exists as to whether Hernandez made a request for accommodations. *Tabatchnik*, 262 F. App'x at 676. While Hernandez claims she told Merrill about her pregnancy and hyperemesis gravidarum and requested accommodations in that phone call, Merrill disputes that the conversation occurred and contends that he did not even know about Hernandez's pregnancy at the time of her termination. (*Compare* Hernandez Dep. Excerpts, Dkt. 48-1, at 6, 9, *with* Merrill Dep., Dkt. 43-3, at 6; 30(b)(6) Dep., Dkt. 43-2, at 16). Because a

---

[5] *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348 (5th Cir. 2019) (conducting an analysis under ADA to evaluate the plaintiff's TCHRA and ADA retaliation claims).

18

factual dispute exists as to the first element of Plaintiff's retaliation claim under the ADA, summary judgment is not appropriate on this claim.

### 4. Failure to Accommodate Claim under the ADA and TCHRA

Discrimination under the ADA includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting § 12112(b)(5)(A)); *see also* TEX. LABOR CODE § 21.128(a) (making it unlawful for an employer to fail to make a reasonable workplace accommodation for a qualified individual with a disability).[6] A plaintiff must prove the following elements for a failure-to-accommodate claim: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist*, 730 F.3d 450, 452 (5th Cir. 2013) (cleaned up).

In its motion for summary judgment on this claim, Clearwater again argues that Hernandez "is unable to demonstrate that she sought an accommodation." (Dkt. 42). Hernandez responds that even Clearwater's own motion acknowledges that "a factual dispute exists as to whether Plaintiff requested reasonable accommodations from Merrill prior to him terminating her employment." (Dkt. 48, at 18). Although Hernandez invites the Court to disregard Merrill's testimony denying that she requested an accommodation as "not credible," the Court may not weigh evidence at the summary judgment stage. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) ("When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the

---

[6] *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999) (conducting a single analysis under the ADA to evaluate the plaintiff's ADA and TCHRA failure to accommodate claims).

19

evidence."). As such, as with Hernandez's retaliation claim brought under the ADA, a factual dispute as to whether Hernandez in fact requested an accommodation precludes summary judgment on this claim.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Clearwater's Motion for Summary Judgment, (Dkt. 42), is **DENIED**. **IT IS FURTHER ORDERED** that Hernandez's partial motion for summary judgment, (Dkt. 44), is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Hernandez's motion is granted with regard to her status as a qualified individual with a disability under the ADA, and with regard to affirmative defenses nos. 2, 3, 8, 9, 13, and 17. Hernandez's motion is denied in all other respects.

**SIGNED** on July 20, 2021.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE